IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Dionco Byrd,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | **1:21cv438 (CMH/TCB)** |
| ) | |
| **Larry Leabough, et al.,** ) | |
|     **Defendants.** ) | |

MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment ("Motion") filed by Colonel Larry Leabough, Major Frank Mack, and Lt. Raven Nickleberry (collectively "defendants") in this civil rights action initiated by Virginia state prisoner Dionco Byrd ("plaintiff"). [Dkt. No. 18]. Defendants' Motion, which was filed on October 29, 2021, was accompanied by a clear Roseboro[1] notice advising plaintiff of his right to file a response consisting of affidavits, sworn statements, and a legal brief. Id. The Roseboro notice also informed plaintiff that his failure to respond would allow the Court to decide the Motion solely on the basis of defendants' Motion. Id. Despite this warning, plaintiff has neither filed any opposition to the Motion nor requested additional time to do so. Accordingly, he is deemed to have admitted the facts alleged by defendants.[2] As explained below, these facts support a judgment in defendants' favor.

---

[1] See Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

[2] When a nonmovant fails to respond to a motion for summary judgment, the motion can be decided solely on the basis of the movant's submissions. See Fed. R. Civ. P. 56(c)(3) (in deciding motion for summary judgment, "[t]he court need consider only the cited materials"); Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."). Plaintiff's status as a pro se litigant does not entitle him to lenience in this respect. See, e.g., Thompson v. Wiedemann, No. 3:16cv834-HEH, 2018 WL 1568681, at *3 (E.D. Va. Mar. 30, 2018) (stating in context of pro se prisoner-initiated (continued on next page)

## I. Background

The complaint recounts several incidents that allegedly occurred while plaintiff was held at Riverside Regional Jail ("RRJ"). [Dkt. No. 3]. Specifically, plaintiff claims that:

1. In violation of the Fifth, Eighth, and Fourteenth Amendments, defendants Leabough and Mack held him in "punitive confinement for 65 days beyond the last day of [an] imposed sanction, without any reason given."

2. In violation of the Fifth, Sixth, and Fourteenth Amendments, defendant Nickleberry "failed to follow fair procedure during [a] disciplinary hearing by serving the charge, administering the hearing, post-poning [sic] the hearing, reconvening the hearing in [his] absence."

3. In violation of the Eighth Amendment, defendant Mack "deprived plaintiff [] the opportunity to out of cell exercise [sic]."

4. In violation of the Eighth Amendment, defendants Leabough and Mack deprived plaintiff "the opportunity to shower, brush his teeth, hygiene and clean clothes for 16 days."

5. In violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments, defendants Leabough and Mack "seiz[ed] and depriv[ed] plaintiff [of his] property without due process."

6. In violation of the Eighth Amendment, defendants Leabough and Mack "deprived plaintiff [of] visitation completely."

[Dkt. No. 3].

With respect to these claims, the following facts are uncontested. At all times relevant to this action, plaintiff was an inmate at RRJ. On December 20, 2020, a Correctional Officer LaVigne attempted to search both plaintiff and his cell for contraband. During the search, plaintiff flushed items of contraband and impeded the officer's attempt to stop plaintiff from doing so. Plaintiff later tested positive for four controlled substances: cocaine, morphine, suboxone, and amphetamines. As a result, plaintiff was charged with four disciplinary

---

suit that a plaintiff's "failure to respond to the Motion for Summary Judgment permits the Court to rely solely on the submissions of Defendants in deciding [the motion]").

violations: (1) assaulting or instigating assault on another person/staff; (2) possessing contraband (as defined in the inmate handbook); (3) having a positive drug or alcohol test; and (4) plotting and planning to break the law or the rules. Plaintiff was brought to the restricted housing unit ("RHU") following this incident.

On January 4, 2021, defendant Nickleberry, who at the time held the role of "Disciplinary Hearing Sergeant," conducted a disciplinary hearing regarding the four charges plaintiff had accrued. Nickleberry reviewed plaintiff's rights, including his right to call witnesses or present evidence, and asked how plaintiff pleaded.[3] Plaintiff then pleaded guilty to all but the assault charge. Nickleberry thus began proceedings in review of that charge, which started by offering plaintiff a chance to relay his account of the incident. Plaintiff had not requested any witnesses but, in telling his side of the story, belatedly asked Nickleberry meet the officer involved in the incident to clarify what had happened.[4] Nickleberry agreed to suspend the hearing to speak with the officer. After speaking with the officer, Nickleberry found plaintiff guilty of the offense and imposed a sanction of fifteen days in disciplinary detention for each charge plaintiff faced.[5]

---

[3] Plaintiff claims that Nickleberry "did not allow [him] to call witnesses in his favor" or "to confront the reporting officer for questioning into why the assault charge was written." [Dkt. No. 3] at 4. But the record establishes that plaintiff did not make any requests for witnesses until the hearing had started and that, despite this, Nickleberry still spoke with LaVigne at plaintiff's request.

[4] Plaintiff asserts that the official, Sgt. LaVigne, "had wrapped him up ... to prevent him from flushing contraband that ultimately resulted in assault on staff." [Dkt. No. 3] at 3. He claims LaVigne confirmed that "the assault was overexaggerated and that ... the assault was unintended." Id. Because defendants do not offer similarly specific information and ultimately concluded that plaintiff was indeed guilty of assault, the Court considers this information to be in dispute and will not include it in its statement of undisputed facts.

[5] Plaintiff claims that Nickleberry merely paused the hearing to speak with LaVigne and then improperly "reconvened the disciplinary hearing in plaintiff Byrd's absence unlawfully." [Dkt. No. 3] at 3. Defendants, meanwhile, contend that, after speaking with LaVigne, Nickleberry "had completed each required element of the disciplinary hearing" and found plaintiff guilty of

3

Nickleberry visited plaintiff at his cell to explain her conclusions and provide plaintiff information and paperwork for any appeal plaintiff wished to file.[6] Plaintiff filed a timely appeal in which he merely disputed the version of the facts Sgt. LaVigne outlined in the original disciplinary charge. Ultimately, plaintiff's disciplinary convictions were upheld on appeal.

Plaintiff served his sentence in RRJ's RHU, which holds two inmate populations; a class of individuals who have been sentenced for violations of RRJ's rules is held in what is called "disciplinary detention," while a second group of individuals who present security concerns is held in what is called "administrative segregation." Inmates in disciplinary detention remain in their cells for twenty-three hours per day, and five days per week are provided one hour to exercise or shower. These inmates are provided hygiene products and have the option to purchase additional products from RRJ's "canteen." In addition to their sanitary items, inmates in disciplinary detention are free to possess only legal material, stamped envelopes and stationery, and, sometimes, personal mail.

Inmates in administrative segregation, meanwhile, are subject to varying restrictions depending on the judgment of the "Restrictive Housing Review Committee" ("RHRC"), which

---

the assault. [Dkt. No. 19-1] at 3. Because the parties appear to dispute whether plaintiff's disciplinary hearing occurred in part without plaintiff's presence, the parties' positions are not included in the undisputed facts section.

[6] Plaintiff claims that Nickleberry never provided him a "Disciplinary Report Supplement … explain[ing] the rationale and sanction." [Dkt. No. 3] at 3-4. But defendants have submitted the form plaintiff claims not to have received; it bears plaintiff's signature and is dated "1-4-21." [Dkt. No. 19-1] at 18-19. The signature is identical to the one at the end of plaintiff's verified complaint. Compare id. with [Dkt. No. 3] at 13. And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." See Scott v. Harris, 550 U.S. 372, 380 (2007). Because plaintiff's version of the facts is blatantly contradicted by the credible evidentiary record, it is not included in the list of undisputed facts.

meets weekly and considers factors such as an inmate's history of disciplinary violations and violent conduct in determining the specific conditions an inmate will face in administrative segregation, or whether the inmate will remain in segregated housing at all.

As noted, plaintiff arrived in the RHU on December 20, 2020. At that time, plaintiff was held in disciplinary detention for the charges he accrued that day. Before the end of his allotted time in disciplinary detention, though, the RHRC determined that plaintiff would remain in the RHU—but under administrative segregation—after the completion of his sentence. The committee cited plaintiff's history of assaultive conduct and repeated possession of contraband in support of this decision.

Despite plaintiff's significant disciplinary history, the RHRC lessened plaintiff's restrictions each time it reviewed his record. Plaintiff initially was not provided, but later earned access to, personal reading materials, a radio, extra recreation time in addition to the one hour he already received five days per week, and phone calls.[7] Plaintiff was not permitted to retain all of his property, however; citing them as potential security risks, RRJ officials denied plaintiff access to bags of potato chips and other items in which plaintiff could theoretically conceal contraband.

Due to the COVID-19 pandemic, in-person visitation has been suspended for all RRJ inmates since July 2020.

---

[7] Despite defendants' sworn affidavits and records showing that plaintiff received hygienic items and more than the minimum amount of outside of his cell, plaintiff claims that, from December 20, 2020, to March 12, 2021, he was not allowed any "out of cell exercise." [Dkt. No. 3] at 5. He also avers that, from December 20, 2020, to January 5, 2021, he was "without toothpaste, soap, toothbrush, deodorent [sic], wash cloth, towel, change of clothes and a shower." Id. at 6.

Although plaintiff attempted to use RRJ's grievance procedure to seek relief as to several issues he was facing, he neglected to submit any informal or formal grievances regarding his ability to exercise outside of his cell or for his alleged inadequate ability to maintain his hygiene.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial … by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## III. Analysis

For the reasons explained below, defendants are entitled to judgment in their favor with respect to each of plaintiff's six claims.

### A.     *Exhaustion of Administrative Remedies*

Defendants assert that plaintiff did not satisfactorily exhaust RRJ's grievance procedure with respect to any of his six claims. [Dkt. No. 19]. The Court concludes that, although plaintiff

undeniably failed to exhaust two of his claims, defendants are not entitled to relief on this theory as to the remaining four.

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory"). The PLRA requires "proper" exhaustion, which demands full "compliance with an agency's deadlines and other critical procedural rules," Woodford, 548 U.S. at 90-91, 93, for if a prisoner could properly exhaust his claims without complying with the procedural rules of his prison's grievance system, any prisoner who did not want to participate in the grievance process could avoid it altogether by filing a grievance he knew would be dismissed for procedural deficiency, id. at 96. To prevent this type of abuse, the Fourth Circuit has made clear that a prisoner cannot exhaust his administrative remedies by failing to follow required procedural steps and that the proper return of an improperly filed grievance does not serve to satisfy the exhaustion requirements of the PLRA. Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008).

Defendants have submitted an affidavit authored by Bonnie Hudson, who holds the role of Office Specialist Senior at RRJ. [Dkt. No. 19-4]. Hudson attests that RRJ's grievance procedure consists of several levels. "[A]n inmate must first submit an Informal Complaint (F.179). If the Informal Complaint does not resolve the issue, the inmate may then submit a Grievance form (F.177). If the inmate is not satisfied with the resolution of the Grievance, the inmate may submit an Appeal form (F.178)." Id. Only after the completion of this process may the inmate file a civil lawsuit under 42 U.S.C. § 1983. Id.

Defendants concede that, in his time at RRJ, plaintiff "filed grievances ... regarding his diet, the confiscation of certain personal photos, and potential exposure to COVID-19" but state that RRJ officials have not received grievances relevant to "any of the issues raised in this case." [Dkt. No. 19] at 8. Plaintiff's verified complaint offers a conflicting account; it alleges that plaintiff submitted informal complaints and regular grievances regarding his alleged deprivation of property, his continued detention in "punitive confinement," and his lack of visitation rights.[8] [Dkt. No. 3] at 7-8. It further claims that plaintiff did not receive a response to any of these regular grievances, rendering him unable to appeal them. Id. With respect to plaintiff's due process claim arising from his disciplinary proceedings, the complaint states that plaintiff "was compelled to submit an inadequate appeal." Id. at 4.

Because plaintiff's complaint is verified, it effectively serves as an affidavit for the purposes of considering defendants' summary judgment motion. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Accordingly, the complaint's allegations that plaintiff was never provided responses to his regular grievances are sufficient to create a dispute of fact with respect to whether the grievance process was truly "available" to him as to those claims. Cf. Samples v. SCDC, No. 1:12-cv-2472-MGL-SVH, 2013 WL 394872, at *2 n.1 (D.S.C. Jan. 11, 2013) (refusing to dismiss prisoner case for failure to exhaust where plaintiff alleged there had been no response to his grievances), report and recommendation adopted, 2013 WL 394202 (D.S.C. Jan. 31, 2013).

---

[8] Specifically, the complaint claims that plaintiff submitted an informal complaint regarding his property on February 8, 2021, and a regular grievance for the same issue on February 14, 2021. [Dkt. No. 3] at 7. On February 9, 2021, plaintiff allegedly submitted an informal complaint regarding his confinement classification, which he followed with a regular grievance on February 17, 2021. Id. Finally, on March 14, 2021, plaintiff filed an informal complaint regarding his visitation privileges. Id. at 8. On March 18, 2021, he filed a regular grievance for the same issue. Id.

It is uncontested, however, that plaintiff did not even begin the grievance process with respect to Claims Three and Four, which relate, respectively, to his alleged inability to exercise outside of his cell or maintain his hygiene. In light of the fact that plaintiff was able to partially exhaust his other claims, the Court concludes that at least some administrative remedies were available to plaintiff and that he did not avail himself of those remedies. On this basis, it is clear that defendants are entitled to judgment with respect to Claims Three and Four. Cf. Mass v. CoreCivic Inc., No. 3:17-cv-01206, 2018 WL 5266445, at *1 (M.D. Tenn. Oct. 23, 2018) ("If a defendant meets its burden to prove that there was no disputed issue on whether a remedy was still available at the time the Complaint was brought, and if a plaintiff did not even attempt to fully exhaust that remedy, summary judgment is appropriate.").

**B.     *Merits Analysis***

The claims not subject to dismissal on exhaustion grounds require more thorough discussion. For the reasons that follow, defendants are entitled to judgment with respect to each of those claims.

  1.   Claim One

In Claim One, plaintiff asserts that, in violation of the Fifth, Eighth, and Fourteenth Amendments, defendants Leabough and Mack held him in "punitive confinement for 65 days beyond the last day of [an] imposed sanction, without any reason given." [Dkt. No. 3].

As an initial matter, the Court concludes that the record at summary judgment contradicts plaintiff's allegations. Indeed, the record makes clear that, in consideration of plaintiff's disciplinary history, RRJ officials reassigned plaintiff to administrative segregation following the completion of his sentence in disciplinary segregation, meaning plaintiff rightfully remained in the RHU for longer than he was sentenced to be there for his actions on December 20, 2020.

Even assuming, arguendo, that plaintiff improperly remained in disciplinary segregation, he has not identified any ground for relief applicable to the facts before the Court. First, because the Fifth Amendment applies to the acts of federal, not state, actors, the acts of RRJ employees cannot form the basis of a valid Fifth Amendment claim. See United States v. Hornsby, 666 F.3d 296, 310 (4th Cir. 2012) (stating that "the Fourteenth Amendment's Due Process Clause is a limitation on state conduct," while the "due process protections against the federal government are found in the Fifth Amendment").

In fact, there is no clear due process hook to plaintiff's claim at all, as the term "due process" contemplates that an individual be provided an opportunity to be heard "at a meaningful time and in a meaningful manner" when some legally cognizable interest of his is at stake. See Armstrong v. Manzo, 380 U.S. 545, 552 (1965). Accordingly, to the extent plaintiff argues that he was denied due process before being sentenced to disciplinary segregation, his claim must focus not on the length of his confinement in the RHU, but on the adequacy of the disciplinary hearing he received before being sentenced there. And to the extent plaintiff's claim is that he should have received more process before being reassigned from disciplinary to administrative segregation, he is incorrect, for an inmate has no right or protected interest in any particular prison classification. See, e.g., Brooks v. Liptrot, No. 1:12-cv-1405, 2012 WL 6125864, at *4 (E.D. Va. Dec. 7, 2012) ("[P]risoner classifications are discretionary matters of prison administration, [and] a prisoner cannot base a civil rights complaint on his ... housing classification decision.") (citing Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978)).

Although there is a logical basis for plaintiff's claim under the Eighth Amendment, the summary judgment record does not support the imposition of actual constitutional liability. First, plaintiff's argument that his extended stay in the RHU was itself violative of the Eighth

Amendment is incorrect, for the length of one's isolation is "simply one consideration among many" in an Eighth Amendment inquiry. Hutto v. Finney, 437 U.S. 678, 687 (1978)). Of course, the specific conditions plaintiff faced in the RHU may also have supported an Eighth Amendment claim, but, as explained above, plaintiff never exhausted administrative remedies with respect to these issues.

Even assuming plaintiff's conditions claims had been properly exhausted, the conditions plaintiff faced would not support Eighth Amendment liability. Every Eighth Amendment claim consists of two components, one objective, one subjective. Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016). To satisfy the first prong, a plaintiff must prove that he suffered a deprivation that was, objectively, "sufficiently serious." Id. "To be sufficiently serious, the deprivation must be extreme—meaning that it poses a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of serious harm resulting from … exposure to the challenged conditions." Id. (internal quotations omitted). To satisfy the second prong, the plaintiff must show that prison officials acted with "deliberate indifference" toward the challenged condition. Id. "To prove deliberate indifference, plaintiffs must show that the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Id. (internal quotation omitted).

Here, the parties dispute what exact conditions plaintiff faced while in the RHU. But even accepting as true plaintiff's allegations that he was denied opportunities to exercise outside of his cell for just over two months and was not in possession of hygiene supplies for two weeks, the Court concludes that he has not established a violation of his rights. Indeed, the conditions plaintiff describes, at least with respect to his hygiene, were objectively constitutional. See, e.g., Johnson v. Fields, No. 2:14-cv-38-FDW, 2017 WL 5505991, at *10 (W.D.N.C. Nov. 16, 2017)

11

("Plaintiff's claim that he was denied a shower and clean clothes for twelve days is insufficient as a matter of law to maintain an Eighth Amendment claim."); DeLoach v. South Carolina Dep't of Corr., C/A No. 4:08–3113–HMH–TER, 2009 WL 1651452, at *3–4 (D.S.C. June 11, 2009) (order adopting and incorporating report and recommendation holding that denial of new jumpsuit and hygiene packet for thirty-day period did not constitute denial of a "basic need"), aff'd, 355 F. App'x 681 (4th Cir. 2009).

Plaintiff's claim regarding his inability to exercise requires more thorough consideration but is ultimately also without merit. Without question, the "complete deprivation of exercise for an extended period of time violates [the] Eighth Amendment." Mitchell v. Riley, 954 F.2d 187, 191 (4th Cir. 1992). But here, the record does not suggest that plaintiff was truly deprived of the opportunity to exercise. First, it is undisputed that plaintiff was provided an hour outside of his cell five days per week. He does not explain why he was unable to exercise during those windows of time. Second, there is no evidence to suggest that plaintiff could not exercise *within* his cell. Recently, in Lyles v. Sterling, 844 F. App'x 651 (4th Cir. 2021), the Fourth Circuit highlighted a plaintiff's inability to exercise *in or out of his cell* in vacating a district court's decision to grant prison officials' motion for summary judgment. See Lyles v. Sterling, 844 F. App'x 651, 654 (4th Cir. 2021) (observing that the plaintiff "could not adequately perform in-cell exercise because he was housed with another inmate" and because "his cell was too small to do the exercises given to him"). Here, there is no evidence that plaintiff could not exercise within his cell at his discretion.

Despite having individually addressed the issues plaintiff raises, the Court is aware that it must consider "the totality of the circumstances" in assessing plaintiff's Eighth Amendment claim. See Mitchell, 954 F.2d at 191. Even doing so, relief is not warranted. Put simply, the

record belies plaintiff's claims that he was denied hygiene supplies and opportunities to exercise while he was held in RRJ's RHU. Accordingly, the Court concludes that defendants are entitled to judgment in their favor as to Claim One.

2. Claim Two

In Claim Two, plaintiff asserts that, in violation of the Fifth, Sixth, and Fourteenth Amendments, defendant Nickleberry "failed to follow fair procedure during [a] disciplinary hearing by serving the charge, administering the hearing, post-poning [sic] the hearing, reconvening the hearing in [his] absence." [Dkt. No. 3].

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving an individual of life, liberty, or property without due process of law. See U.S. Const. amend. XIV, § 1. Consequently, "[t]o state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). Prisoners possess a liberty interest only in (1) state-created entitlements to early release from incarceration, see Bd. of Pardons v. Allen, 482 U.S. 369, 381 (1987), and (2) being free from conditions that "impose[] atypical and significant hardship … in relation to the ordinary incidents of prison life," see Sandin v. Connor, 515 U.S. 472, 484 (1995). And a deprivation of property by state officials "offends due process only where the procedural protections afforded by officials are insufficient to ensure that deprivations under the policy are lawful." See DePaola v. Clarke, No. 7:17cv28, 2019 WL 1370882, at *7 (E.D. Va. Mar. 26, 2019) (citing Zinermon v. Burch, 494 U.S. 113, 128 (1990)). Where a plaintiff fails to identify a protectable liberty or property interest that is placed in jeopardy by a defendant's actions, he fails to establish that he is owed any level of procedural protection. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005) ("We need reach the question of

13

what process is due only if the inmates establish a constitutionally protected liberty [or property] interest.").

Here, plaintiff received a sentence of placement in disciplinary segregation after his disciplinary proceedings. Because an inmate has no interest in his category of prison housing, see Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978), plaintiff was not owed any particular form of process before being housed there. Nor did the conditions he faced constitute "atypical and significant hardship" in relation to the ordinary incidents of prison life. In Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997), the Fourth Circuit determined that the following conditions in administrative segregation did not constitute atypical and significant hardship in comparison to general population:

> … cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

Beverati, 120 F.3d at 502. As described in other sections of this Memorandum Opinion, plaintiff's conditions of confinement did not come close to approaching this level.

Even assuming plaintiff had any interest in avoiding the disciplinary sentence he received, it is clear that he received the requisite level of process ahead of that time. Under Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974), an inmate subject to the loss of a protected interest is entitled to:

> (1) written notice of the disciplinary charges at least twenty-four hours in advance of the disciplinary hearing; (2) a neutral and detached hearing body; (3) the

>opportunity to call witnesses and present documentary evidence; (4) an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex; and (5) a written statement provided by the fact finder(s) outlining the evidence relied upon and the reasons for the chosen course of disciplinary action.

Russell v. Wilson, No. 2:15cv51, 2015 WL 4479744, at *5 (E.D. Va. June 17, 2015) (citing Wolff, 418 U.S. at 563-67).

The record at summary judgment makes clear that plaintiff's disciplinary proceedings satisfied this standard. First, plaintiff does not dispute that he received written notice of the disciplinary charges; in his complaint, he alleges that "prior to conducting the hearing, Defendant Nickleberry served (4) infractions." [Dkt. No. 3]. He equally does not contest that Nickleberry was a "neutral and detached" party. Finally, defendants have introduced a document—signed by plaintiff—that includes a statement of the evidence Nickleberry relied upon, indicates that plaintiff was read his rights regarding witnesses, and notes that plaintiff declined staff assistance in the proceedings.

With respect to the Sixth Amendment aspect of this claim, plaintiff is not entitled to relief as a matter of law. Indeed, plaintiff is mistaken regarding his belief that he had any right to confront his accuser under the Sixth Amendment, for the Sixth Amendment applies only to criminal prosecutions, see U.S. Const. amend. VI, and "[p]rison disciplinary proceedings are not criminal proceedings." Baxter v. Palmigiano, 425 U.S. 308, 316 (1976)

For these reasons, it is clear that defendants are entitled to judgment in their favor as to Claim Two.

3. Claim Five

In Claim Five, plaintiff asserts that, in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments, defendants Leabough and Mack "seiz[ed] and depriv[ed] plaintiff [of his] property without due process." [Dkt. No. 3].

As has already been established, the Fifth Amendment is not applicable to any of plaintiff's claims, and any Fourteenth Amendment due process concern is obviated by the adequate procedure plaintiff received in his disciplinary hearings. Accordingly, the Court must only discuss the Fourth and Eighth Amendment aspects of Claim Five.

The factual basis of plaintiff's Fourth Amendment argument is not thoroughly developed. The complaint alleges only that plaintiff's "property was searched several times for contraband" and that plaintiff was denied access to "property that is authorized in the SHU." [Dkt. No. 3] at 6. It does not state when these searches allegedly occurred or what types of property plaintiff was denied.

Despite the lack of clarity in the complaint, the record clearly establishes that plaintiff's allegations are false or misleading. The record shows that, from the end of his disciplinary sentence, plaintiff possessed, and was incrementally provided additional, personal property. But even if the Court were to accept plaintiff's allegations as true, it is still clear that any searches of plaintiff's cell or seizures of property would have passed Fourth Amendment muster because "a prisoner has no cognizable expectation of privacy in his cell," Ballance v. Young, 130 F. Supp. 2d 754 (W.D. Va. 2000), aff'd sub nom, Ballance v. Rowlette, 11 F. App'x 174 (4th Cir. Apr. 26, 2001), and "the same reasons that le[d] [the Supreme Court] to conclude that the Fourth Amendment's proscription against unreasonable searches is inapplicable in a prison cell [] apply with controlling force to seizures," Hudson v. Palmer, 468 U.S. 517, 528 n.8 (1984).

Nor was any deprivation of plaintiff's property a violation of his Eighth Amendment rights, for, absent extraordinary circumstances, a prison official's seizure and destruction or retention of personal property does not violate the Eighth Amendment. See, e.g., Thomas v. New Mex. Corr. Dep't, 272 F. App'x 727, 728, 730 (10th Cir. 2008) (dismissing Eighth Amendment claim where, against prison policy, the defendant-officer destroyed the plaintiff-inmate's property rather than permitting him to mail the property home); Nigro v. Wilson, No. 95-56347, 1997 WL 542008, at *1 (9th Cir. 1997) (affirming dismissal of Eighth Amendment claims regarding destruction of property"); Durham v. Department of Corr., 173 F. App'x 154, 156 (3d Cir. 2006) (affirming dismissal of Eighth Amendment claim regarding seizure of property). For these reasons, it is clear that defendants are entitled to judgment in their favor.

4.   Claim Six

In Claim Six, plaintiff asserts that, in violation of the Eighth Amendment, defendants Leabough and Mack "deprived plaintiff [of] visitation completely" for the time he was held in RRJ's RHU. [Dkt. No. 3].

The summary judgment record once more contradicts plaintiff's allegations. Indeed, the record makes clear that RRJ had adopted a blanket policy that in-person visitation would not be allowed due to the COVID-19 pandemic. Additionally, although plaintiff was initially not permitted access to the telephone when he was taken to disciplinary segregation, the RHRC reinstituted the privilege before plaintiff was released from the RHU. Accordingly, for a significant portion of the time plaintiff resided in the RHU, he could have used the phone to contact family members.

Even if the record did support plaintiff's position, he would not possess a viable claim. The Supreme Court has made clear that "an indefinite withdrawal of visitation" privileges is not,

on its face, unconstitutional. See Overton v. Bazzetta, 539 U.S. 126, 137 (2003). Courts in this circuit have upheld *far* more significant visitation restrictions than those plaintiff faced. See, e.g., Thomas v. Drew, 365 F. App'x 485, 488 (4th Cir. 2010) (no Eighth Amendment violation where inmate's telephone privileges were suspended for more than fifty years as a sanction for "misuse of telephone"); Pevia v. Shearin, No. ELH-14-2928, 2015 WL 9311970, at *15 (D. Md. Dec. 22, 2015) (finding no Eighth Amendment violation based on the temporary loss of privileges such as visitation, phone use, commissary, and recreation); Alkebulanyahh v. Ozmint, No. 6:07-3219-MBS-WMC, 2009 WL 2043912, *10 (D.S.C. July 13, 2009), aff'd, 358 F. App'x 431 (4th Cir. 2009) (no Eighth Amendment violation where an inmate's visitation privileges were suspended for more than two-years following eleven major disciplinary convictions). On this backdrop, it is clear that plaintiff's merely weeks-long deprivation of his ability to contact individuals outside of RRJ was not a violation of the Eighth Amendment.

### IV. Conclusion

For the reasons stated above, defendants' Motion for Summary Judgment will be granted in an Order that will accompany this Memorandum Opinion.

Entered this 9th day of Mar., 2022.

Alexandria, Virginia

Claude M. Hilton
United States District Judge